UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FABIAN MALAGON-ALEJANDRES (A-201-883-813),<br>Petitioner,<br>v.<br>WARDEN,<br>Respondent. | Case No. 1:26-cv-03826 DJC-CSK<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Fabian Malagon-Alejandres (A-201-883-813), a native and citizen of Mexico, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner challenges his April 2026 detention by U.S. Immigration and Customs Enforcement ("ICE"). For the following reasons, this Court recommends granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

## I. BACKGROUND

On April 29, 2026, petitioner was detained by ICE in front of the Fresno County courthouse en route to a proceeding in his pending state court misdemeanor case for driving under the influence ("DUI") case. (ECF No. 1 at 5.) On May 18, 2026, petitioner filed his pro se

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

habeas petition, a motion for a temporary restraining order, and a motion to appoint counsel. (ECF Nos. 1, 2, 3.)

On May 19, 2026, the district court stated that the issues raised therein appeared to mirror those previously addressed in many prior cases. (ECF No. 6.) The district court directed respondents to show cause whether there are any factual or legal issues in this case that render it distinct from the district court's prior orders listed and would justify denying the petition. (ECF No. 6.) On May 22, 2026, respondent filed a response to the order to show cause, opposition to the motion for a temporary restraining order, and response to the petition. (ECF No. 8.)

On May 28, 2026, the district court denied petitioner's motion for a temporary restraining order. (ECF No. 9.) The district court held that it "cannot presently find that Petitioner has a likelihood of success on the merits, as he may be subject to mandatory detention under 8 U.S.C. § 1226(c)." (Id.) The Court granted petitioner's motion to appoint counsel, and referred this action to the assigned magistrate judge or further proceedings. (Id.) On June 5, 2026, counsel was appointed. (ECF No. 11.) Petitioner filed a counseled reply on July 17, 2026, and a declaration on August 3, 2026. (ECF Nos. 13, 14.) Briefing is complete. (See Docket.)

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

///

## III. DISCUSSION

Petitioner challenges his detention as a violation of the Fifth Amendment procedural due process clause.[2] (ECF No. 1.) Respondent argues that petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(E) because respondent contends petitioner was "arrested and charged" on April 6, 2024 with battery with serious bodily injury in violation of California Penal Code § 243(d). (ECF No. 8 at 1-3; ECF No. 8-3 at 4-5.)[3] Respondent also argues that petitioner has not exhausted administrative remedies where petitioner can challenge his mandatory detention under Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999), in a "Joseph Hearing." (ECF No. 8 at 7.) Respondent contends that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) as an "applicant for admission." (ECF No. 8 at 8.) In petitioner's counseled reply, petitioner contends that he is detained pursuant to § 1226(a), not § 1225(b)(2) or § 1226(c). Petitioner argues that the Laken Riley Act should not apply. (ECF No. 13 at 4-6.) Finally, petitioner also raises a new claim in his reply not raised in the petition—that his confinement conditions are punitive in violation of substantive due process. (ECF No. 13 at 2, 10-11.)

### A. Applicability of 8 U.S.C. § 1225(b)(2)

The Court first addresses respondent's argument that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) as an "applicant for admission." (ECF No. 8 at 8.) Based on the record before the Court, the Court finds that petitioner entered the United States in 1991 or 1992 when he was nine years old. (ECF No. 13 at 2; ECF No. 14 at 3.) Petitioner was detained by ICE in April 2026 in Fresno, California. The government's own records also support finding that § 1225(b)(2) does not apply. (See ECF no. 8-2 (arrest warrant issued pursuant to 8 U.S.C. § 1226, Immigration and Nationality Act ("INA") Section 236).)

---

[2] Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes petitioner's claim as a Fifth Amendment due process claim challenging his detention, and not limited to a claim challenging the detention as prolonged. The Court also notes that respondents did not focus on prolonged detention in their response. (See ECF No. 8.)

[3] Respondent also asserts that petitioner was arrested and charged with felony assault with a deadly weapon in violation of California Penal Code § 245(a)(1), but respondent does not assert this charge as a basis for detention pursuant to § 1226(c).

After the petition and the government's response to the petition were filed, the Ninth Circuit decided this issue in Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026) on July 30, 2026. In Rodriguez Vazquez, the Ninth Circuit rejected respondent's argument, concluding that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Id. at 1165. The majority of courts nationwide agree, rejecting respondent's new interpretation[4] of Sections 1225 and 1226. See, e.g., Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026); Lopez-Campos v. Raycraft, et al., 175 F.4th 713, 735 (6th Cir. 2026); Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, 175 F.4th 1258, 1285 (11th Cir. 2026); Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful."); Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

Therefore, respondent's argument that petitioner is an "applicant for admission" subject

---

[4] Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal. See Rodriguez Diaz, 53 F.4th at 1196.

to § 1225(b)(2) fails.

**B. Applicability of 8 U.S.C. § 1226(c)**

The Court next turns to respondent's argument that petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E), the Laken Riley Act, because respondent alleges petitioner was "arrested and charged" with battery with serious bodily injury in violation of California Penal Code § 243(d) in April 2024. (ECF No. 8 at 1-3.) In January 2025, the Laken Riley Act was enacted, adding 8 U.S.C. § 1226(c)(1)(E), which mandates detention for a noncitizen deemed "inadmissible" for being "present in the United States without being admitted or paroled," who is "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]" 8 U.S.C. § 1226(c)(1)(E)(i), (ii). Petitioner argues that the Laken Riley Act should not apply because petitioner has no criminal convictions, petitioner has not admitted any wrongdoing for any crime, "there is no indication that charges were ever filed" against petitioner for violating California Penal Code § 243(d) battery with serious bodily injury, and the arrest is from April 2024. (ECF No. 13 at 6, 4-5 (citing Brandon Y.M. v. Andrews, No. 1:25-cv-01962 SKO, 2026 WL 125234 (E.D. Cal. Jan. 16, 2026)).)

Brandon Y.M. v. Andrews, No. 1:25-cv-01962 SKO, 2026 WL 125234 (E.D. Cal. Jan. 16, 2026), is instructive. In Brandon Y.M., the government similarly contended that petitioner's "arrest for battery resulting in serious bodily injury to another under Cal. Penal Code § 243(d) qualifies under the [Laken Riley Act] and subjects Petitioner to mandatory detention under § 1226(c)." Id. at *3. The court held:

> Respondents now allege this second basis for detention, but the only evidence proffered is a rap sheet which indicates Petitioner was "Arrested/Detained/Cited" for the crime. (Doc. 8-1 at 5.) There is no distinction made between any of these terms, and being "detained" or "cited" for a crime is insufficient under the LRA. There is also no evidence that the alleged crime resulted in death or serious bodily injury to another. (Doc. 8-1 at 5.) Ans [sic] although Petitioner was arrested, no complaint was ever filed. (Doc. 9-1 at 2-4.) Under California law, when an individual is arrested but released with no

> filed accusatory pleading, "the arrest shall not be deemed an arrest, but a detention only." Cal. Penal Code § 849.5. Thus, Petitioner's detention does not qualify under § 1226(c)(1)(E)).

Id. Like Brandon Y.M., the only evidence respondent proffered for asserting that petitioner was "arrested and charged" in April 2024 with Cal. Penal Code § 243(d) to trigger the Laken Riley Act is petitioner's rap sheet, which also only provides "ARREST/DETAINED/CITED" for Cal. Penal Code § 243(d). (See ECF No. 8 at 1-2 (citing rap sheet (ECF No. 8-3 at 5); Rap Sheet (ECF No. 8-3 at 4-5)); see Brandon Y.M., 2026 WL 125234, at *3. Like Brandon Y.M., the Court cannot find based on the evidence proffered that petitioner was arrested or charged with Cal. Penal Code § 243(d) where the rap sheet only provides "ARREST/DETAINED/CITED", and "detained" or "cited" is insufficient under the Laken Riley Act. See Brandon Y.M., 2026 WL 125234, at *3. Respondent has offered no evidence that petitioner was actually charged with violating Cal. Penal Code § 243(d), despite repeating this assertion in its brief multiple times. (See ECF No. 8.)

There are additional reasons that support this finding. By contrast, rather than relying on the rap sheet, respondent did submit multiple state court records for petitioner's criminal DUI case, including the docket, the Fresno Superior Court's March 13, 2026 Minute Order, and the charging document (the Criminal Misdemeanor Complaint). (See ECF No. 8-4.) On March 29, 2025, petitioner was arrested for driving under the influence of alcohol in violation of California Vehicle Code § 23152(a) and driving under the influence of alcohol with a blood alcohol content of 0.08 percent or more in violation of California Vehicle Code § 23152(b). (ECF No. 8 at 2.) Petitioner was subsequently charged in a misdemeanor criminal complaint dated June 10, 2025 with three counts based on the March 29, 2025 conduct, in violation of California Vehicle Code § 23152(b), California Vehicle Code § 23152(a), and California Vehicle Code § 12500(a) for driving without a valid driver's license. (ECF No. 8-4 at 5-6.) This is in stark contrast to the government's insufficient proffer for the April 2024 Cal. Penal Code § 243(d) offense. For the reasons provided above, the Court finds that petitioner is not subject to detention pursuant to § 1226(c)(1)(E).

Respondent also argues that petitioner has not exhausted administrative remedies where petitioner can challenge his mandatory detention under Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999), in a "Joseph Hearing." (ECF No. 8 at 7.) Because the Court finds that petitioner is not subject to detention pursuant to § 1226(c), respondent's exhaustion argument fails.

**C. Due Process Claim**

In analyzing petitioner's challenge to his detention, the court "must first identify the statutory provision that purports to confer" authority for his detention. Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Having determined that petitioner is not detained pursuant to § 1225(b)(2) or § 1226(c), the Court concludes that petitioner is therefore detained pursuant to § 1226(a).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 818 F.Supp.3d 1141, 1151 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690). Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint.

Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner entered the United States when he was approximately nine years old and has been present in the United States for over thirty years. He is married, has four U.S. citizen children, three are minors and one has disabilities, requiring home care. (See ECF Nos. 1, 13, 14.) This Court finds that petitioner has a protected liberty interest.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th at 1206; see also Hernandez v.

Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, as described above, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Here, petitioner has been detained since April 29, 2026 without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts

are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is entitled to relief on his due process claim.

## IV. PETITIONER'S OTHER CLAIMS FOR RELIEF

Because the Court recommends granting the petition on the procedural due process claim, the Court need not address any additional claims raised in the petition or raised for the first time in petitioner's reply brief. See N.K. v. Noem, No. 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release"). The Court also notes petitioner raises a new substantive due process claim in his reply that was not raised in the petition and to which respondent has not had an opportunity to respond. The Court declines to address this new claim raised in the reply. See Cacoperdo v. Demosthenes, 37 F.3d

504, 507 (9th Cir. 1994) (explaining that "[a] [t]raverse is not the proper pleading to raise additional grounds for relief.").

## V. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.
2. Respondents be ordered to IMMEDIATELY release petitioner Fabian Malagon-Alejandres (A-201-883-813) and be ordered to provide petitioner with a copy of the release order at or near the time of release. If respondents have custody of petitioner's personal possessions and documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.
3. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation constitutionally adequate bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that physical custody is legally justified. Petitioner shall be allowed to have counsel present at any such hearing. This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).
4. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that

///

///

failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 8, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

csk/mala.3826.26.frs.